United States v. Oloa, Oloa, you're going to have to correct me on that, 22-6046. Good morning, Your Honors. Amy Senya from the Federal Public Defender's Office on behalf of the appellant, Mr. Michael Oloa. This case involves a single sentencing issue. Whether the district court clearly erred in applying the cross-reference attempted murder guideline to Mr. Oloa's sentence. In doing so, the district court relied on one piece of evidence, the guideline that Mr. Oloa fired his gun at the officers and therefore must have intended to kill them. But all that video shows is Mr. Oloa firing in a random direction behind him as he runs the other way. It does not show where Mr. Oloa fired his gun. It does not show him firing at the officers. And it's simply of too poor quality to draw any conclusions whatsoever about Mr. Oloa's intent. As a result, this court should reverse. The parties here agree that for the attempted murder guideline to apply, the government was required to prove that Mr. Oloa fired his gun with the specific intent to kill the officers that were pursuing him. Showing that Mr. Oloa acted recklessly or even with extreme indifference when he simply not enough. But in attempting to prove Mr. Oloa's intent, the government introduced and relied on only one piece of evidence, the surveillance video. It did not call the officers to testify as witnesses, to say that Mr. Oloa's gun was aimed directly at them. And perhaps they didn't do so because in their reports, which were cited in the PSR, they state that they heard a gunshot during their pursuit of Mr. Oloa. They never stated that they saw him aim his gun at them. And with one officer, two and a half cars... Do we need aiming in this case? Aiming is discussed a lot in the briefing. Isn't it enough when you have an officer following closely your client that he shoots in the direction of the officer? It is not enough, Your Honor. He has to aim. You have to aim in an attempt to fire at the person. And that's black letter law that firing in a general direction is simply not enough to infer an intent to kill. As I look at the video, he turned around, first saw where the officer was, then shot behind him. So is that enough? It's not enough, Your Honor. He turns behind him and then what you can see from the video is Mr. Oloa reaching behind his back and firing. But because of the vantage point of the camera, the camera is... If I'm Mr. Oloa, the camera is right here on the right. What you can't see is the angle of his arm. So his arm could be here or his arm could be firing 20 feet. This is a finding fact, right? Yes, Your Honor. We have to find clear error. Yes, Your Honor. And in your brief, you argue that the video provides no grounds for concluding that the government's version of the events is likelier than Mr. Oloa's. Isn't that a concession that we can't find clear error? If you can look at the video and you can decide either thing and the court decides one of those two things, it's not clear error. No, Your Honor. This is not a case in which there are two permissible views of the evidence. Although I understand that that phrase from the brief might have made it seem that way, but this is a case in which there is only one permissible view of the evidence and that is that you cannot see what direction his arm is angled in. Well, his arms... I could see what... I mean, he's shooting behind him after just looking and seeing that the officer is behind him. With respect, Your Honor, it simply does not show that he was aiming at the officer. Yes, he's firing behind him. So if you're a bad shot, you're just not very good at shooting people, then you're not likely to be convicted of this crime than if you're, you know, a marksman. I think that's a red herring here, Your Honor, because we don't know what Mr. Oloa was intending at all. The only piece of evidence we have is this video. He could be an excellent shot for all we know. He looked behind him. The only way to prove intent then would be through testimony of your client? No, Your Honor. If the video showed a different vantage point, for example, behind Mr. Oloa so that you could see the angle of his arm and that video clearly showed that his arm was angled at the officer, then yes, that would be a situation in which you could use a video. But here, when the video is simply too unclear, all we can conclude is that we just don't know what he was aiming at. And because of that, we can't make any determinations about whether he was a poor marksman or not. Sure, if there's other evidence of intent. Well, he didn't shoot it up in the air, right? And he clearly didn't shoot it like that. He saw he's being chased by a police officer. He looks behind and then he goes and fires the gun. And so you're saying if we can't tell that the muzzled gun was parallel as opposed to tilted this way or that way, that he can't be, that it's clear error? What I'm saying, Your Honor, is that from the angle of the video, because you can't see where his arm is, it's possible that Mr. Oloa looked behind him to make sure he wouldn't hit the officer and then aimed in the other direction, which was more likely to be successful in getting the officers off his tail than firing directly in the air, which would have shown the opposite. It would have said that he wasn't going to hit them and it wouldn't have deterred them at all. If his intent is to... So he's just trying to scare them, not kill them. Exactly, Your Honor. And he was punished for that behavior. He received a six level enhancement for exactly that behavior, for firing a gun while there's people around, while they're putting officers at risk of substantial bodily harm. And we're not challenging that on appeal. Well, that's good because there's a woman in the video standing right there. So it's... To go back to the point about firing someone's general direction not being enough, it's black letter law that firing above someone's head, firing in an occupied building, firing into a crowd, firing to scare someone but not to hit them is insufficient to prove an intent to kill. And this is confirmed by every single case cited by the government. In every single one of those cases, there was evidence that the defendant pulled the trigger directly at the victim. Well, the cases, some of the cases that you cite are dealing with convictions. And so you have a standard of beyond a reasonable doubt. Here we're dealing with sentencing, right? Well, so... And it's not a beyond a reasonable doubt standard for the district court, is it? It's not, Your Honor, but the cases cited by the government were sentencing cases like Alexander, for example. That was a sentencing case where it was the exact same question here of whether the cross-reference attempted murder guideline applied and whether there was evidence of that. And so the cases that the government relies upon are using a preponderance of the evidence standard. And in each of those cases, the court explained that putting a gun to someone's head and pulling the trigger obviously shows an intent to kill because that's the apparent purpose of their act, is to cause the victim's death. And here you have a completely different situation where Mr. Alo is faced in the other direction. He's running away from the officers. That's simply not consistent with somebody who's shooting to kill. Somebody who's shooting to kill looks at their victim and fires at them so that they can achieve their goal. Do we look at all of the second attempt to shoot? There is no evidence in the record that Mr. Alo attempted to fire a gun a second time. The district court... The PSR says that he was trying to get the gun to work and he repeatedly tried to make it work. And the district court accepted the PSR as its findings at sentencing. Yes, Your Honor. The district court did accept the PSR. That particular fact was not mentioned by the district court in its rationale. And importantly, it's not probative of an intent to kill because we don't know where the officers were at that point. The video does not show the officers on the screen. And mere seconds before is when Mr. Alo fires his weapon. He was trying to get the gun to work because he was just trying to see if the gun would work. He didn't really have a purpose in attempting to make the gun work. I mean, couldn't the district court look at that and say, well, it looks like he's trying again to shoot. The district court could have said that. It did not. It did not rely on that fact. The government hasn't relied upon it here. What the district court relied upon was the fact that the gun was jammed. And that was simply a misunderstanding of how firearms and semi-automatics work. It was jammed because of the shot that Mr. Aloa fired, not because he pulled the trigger a second time. And so what you can see if you look at the actions that he is attempting to make it work, aren't those relevant? I don't think they are, Your Honor, because we don't know where the officers were at the time. And so, yes, Mr. Aloa changes his tactic to brandishing a gun. But brandishing is not evidence of an intent to kill, especially when we don't know where the officers were. Seconds before is when he discharged his firearm. And we know from the videos and from the PSR that the officers then took cover. And given that this is three to four seconds later, it's likely that the officers are still hiding behind the cars. So the fact that he's waving his gun around as he continues to run away does not evidence that he intended to kill them. And unless there are any more questions, I would like to reserve the remaining time for rebuttal. Thank you. May it please the Court. My name is Mark Stoneman for the United States. Mr. Aloa asks this court to substitute its own view of the evidence for that of the district court. This court should decline to do so. Mr. Aloa's approach to the evidence here appears to be to look at discrete portions, vertical slices of the evidence, particularly and almost solely the video in a vacuum, and then argue that those individualized vertical slices by themselves were insufficient to prove by preponderance of the evidence that his client intended. What other evidence was there of intent to kill? So there is other evidence. And I would note that even if the video were the only evidence, the government submits that that would have been sufficient and certainly does not show clear error. But it is not the only evidence. In addition to the video, the court cited Mr. Aloa's history for dishonesty as evidence of credibility or lack of credibility for his proposed view of the evidence, not just view of the evidence, but his kind of informally proffered version of the facts, his claim that he fired the gun into the ground. The other evidence that the court cited was the fact that the gun was later found to in fact be jammed, that this corroborated the investigator's initial impression of the video as detailed in paragraph 13 of the PSR. And this was based on their view of the surveillance footage prior to Mr. Aloa being found, prior to them confirming that the gun had in fact jammed, they were viewing the surveillance footage while other investigators were looking for Mr. Aloa. And it appeared to them that Mr. Aloa was attempting to clear the gun after the first shot and before pointing it again. And after he fires the first shot, the district court and this court should ask itself, how did he know that it was jammed? How did he, running from his pursuers, having fired behind him, what prompts him to bring the gun forward and begin to try to clear the jam? The logical inference there is that after he fired, which prompted him to bring the gun in front of him, attempt to clear it, and this court and the district court could draw the logical inference that the reason, the only reason why Mr. Aloa, running from two police officers, would take, use, expend efforts at that moment to try to clear that gun was because he wanted to fire it again. But the issue is whether he wanted to fire it to kill them or to scare them. Yes, Your Honor. And Mr. Aloa, in his brief, in his reply brief on page 2, says, quote, proof that a firearm was pointed close to where another person was standing could support the inference that the defendant was aiming to kill. The district court made the finding, factual finding, based on the video evidence, that Mr. Aloa pointed the gun in the direction of the officers who were following him. And as this court pointed out, the district court was making a sentencing finding. It only had to prove by preponderance of the evidence. And it is the government's position that even if the only evidence is that a person points a gun in the direction of another person and pulls the trigger, that that, as a starting point, gets you at least above preponderance of the evidence. Because guns are designed to shoot bullets. Bullets are designed to kill people. And I think what the response would be is that we can't tell whether the gun was pointed in the direction of the officer. And it's, as I argued in front of the district court, it's the government's position that the video, the angle of the video is sufficient to show that Mr. Aloa, as this court pointed out, looked in the direction behind him, saw that there was an officer pursuing him, throws his arm back behind him, and pulls the trigger. And as I advised the district court upon a close analysis of the video, the frame that shows the muzzle shot shows that the muzzle flash, I should say, is not in line with Mr. Aloa's arm, which just by the fact that he's running forward and his arm's behind him. His arm is lower, it's at a lower angle, but the muzzle flash is not in line with his arm. It is parallel to the ground and it is perpendicular with the pursuing officer. And at most... I guess that we should be concerned, or the district court should be concerned, with the angle of his hand rather than his arm. Well, the angle of his hand certainly shows where the barrel was pointed. The angle of his arm shows the angle of his arm. The muzzle flash shows the angle of the barrel of the gun. And since it is not, since the muzzle flash is not in line with his arm, the angle of his hand shows that the muzzle flash is not in line with his arm. It is in line with the pursuing officer. In other words, though his arm is angled down, Mr. Aloa was adjusting his wrist to shoot in the direction of the officer, which Mr. Aloa concedes could be, could support the inference that the defendant was aiming to kill. And other evidence that the court, other evidence that there was in the record, the court did not specifically say it relied on this evidence, but there is, Mr. Aloa points this out, the lack of particular evidence may be evidence as well. And in this case, neither the projectile nor a defect, that is a bullet hole, were located in the places we would expect to have found them if Mr. Aloa had in fact shot the gun into the ground. In other words, if he, as he claims, was firing the gun into the ground, we would expect to have found the projectile in the ground. We would have expected to find a bullet hole in the pavement, in the ground. We did not. And that is certainly evidence that his version of the, his version of the facts is not accurate. This court has said in Crane that Mr. Aloa has shown that if the district court's account of the evidence is plausible in light of the record viewed in its entirety, and the record in its entirety is more than just the video, this court said the court of appeals may not reverse, even though it was convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently. At most, Mr. Aloa has shown that his own interpretation of the evidence is plausible. And I believe in our brief we conceded it's plausible. He has not, though, and cannot show that the district court's interpretation of the evidence is not plausible. As this court has said, thus, where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. But you need not, the defense need not show that the court's ruling was flatly contradicted, right? I mean, as far as the standard of review? I believe that Mr. Aloa here, his burden is to show that, that the district court's interpretation of the evidence is not shown. And you're saying plausible is all we need to affirm. That is what this court has said. And for those reasons, this court should affirm the application of the attempted murder cross-reference. If there are no further questions, I thank you for your time. Thank you. We'll waive the remainder of my time. Just a few quick points, Your Honor. I'd like to first address the jammed gun. Regardless of what the PSR said, it's still not probative of Mr. Aloa's intent to kill. And that's really the main point here. There's many reasons why he may have been messing with the slide of his gun, which I submit the video doesn't show. That's also clearly erroneous. But even if it did, it's not probative of an intent to kill because Mr. Aloa was not firing at the officers that second time. He was not raising his gun at the officers. We don't know where the officers were. Is it probative of his attempting to again fire the weapon? I would say that it's not even probative of that. Because if you watch the video, it doesn't appear that he's looking at the gun and he's trying to see what happened. The government counsel's statement that he pulled the trigger again is pure speculation. And you can see that in the video. That's what he was trying to do. I'd also like to address the point about the government made about there was no evidence that there was a bullet found in the ground. Well, there was no evidence of any bullet being found. So certainly it was not the defense's burden to go out and look at the trajectory of bullets or try to identify bullets months later when the government wanted to apply this attempted murder enhancement. The absence of where the bullet went, given that the government did not make any effort to recover it, does not help prove the government's case. And finally, I'd like to address the issue of plausibility. It's not just that this court affirms if the district court's finding is plausible. It's whether it's plausible based on the evidence in the record. And what we have is an ambiguous video that does not show the one piece of information that we would need to know in order to draw a conclusion about Mr. Aloa's intent. And the district court is not permitted to speculate about what the evidence shows. So if this court looks at the video and agrees that you cannot tell where his arm is angled, you cannot tell what he's aiming at, then you must reverse. And I would direct this court to its opinion in Mejia Canales where there were photographs that were introduced at a sentencing to try to prove an enhancement. And this court, looking at those photographs, said you simply cannot tell from the situation here. Looking at the video, you cannot tell what Mr. Aloa is intending to aim at. And therefore, you cannot conclude that he intended to kill the officers. For that reason, we would ask that this court reverse. Thank you. Thank you. And we will take this matter under advisement.